ORDEN RELIGIOSA, ETC., ET AL., Plaintiffs and Appellees, *v.* R. SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellant.

No. 8344. Argued December 11, 1941.—Decided February 12, 1942.

*George A. Malcolm, Attorney General,* and *M. Rodríguez Ramos, Assistant Attorney General,* for appellant. *Fernando Zapater* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a judgment of the District Court of Mayagüez directing the Treasurer of Puerto Rico to refund to the plaintiffs the sum of $622.40 collected by him as taxes, together with interest thereon and costs.

The Treasurer appealed, and in his brief he urges that the trial court erred: (1) in overruling the demurrer for insufficiency; (2) in holding that Joint Resolution No. 4 of July 16, 1932 (Laws of 1932, p. 62), was unconstitutional; (3) in holding that the act levying the tax objected to was not uniform; and (4) in rendering judgment for the plaintiff.

The plaintiff is a religious institution composed of the persons named in the complaint, who own the seven rural properties therein described, located in the ward of Montoso of the municipal district of Maricao, all of them being devoted to the cultivation of coffee and lesser crops.

Pursuant to the provisions of Joint Resolution No. 4 of 1932, the Treasurer of Puerto Rico collected from the plaintiffs as taxes on the said properties, to be covered into the "Coffee Insurance and Rehabilitation Fund," for the years 1932–33 to 1936–37, specific sums totaling $620.40 which the plaintiffs paid under protest on March 23, 1938, and whose refund they claim on the following grounds:

"(1) Because the Treasurer of Puerto Rico was without authority to collect a tax imposed by a joint resolution, whereas the proper way to impose it was by an act, as required by our Organic Act.

"(2) Because the said tax is not uniform."

After the Treasurer had been served with summons, he set up by way of demurrer "that the complaint in its pres-

ent form does not state facts sufficient to constitute a cause of action in favor of the plaintiff and as against the defendant.''

Upon the demurrer being overruled, the defendant moved that final judgment be rendered, which the court did in the way already stated by us.

After the foregoing recitals, we will proceed to a consideration of the appeal on its merits.

Does the complaint state a cause of action? Was or was not Joint Resolution No. 4 of 1932 validated by the Congress and, therefore, is or is not said Joint Resolution constitutional? Are there any other circumstances which would justify the refund sought? Let us see.

Said Joint Resolution No. 4 of 1932, approved July 16, 1932 (Special Session of that year) was held by this court to be unconstitutional on December 7, 1936, in *Acevedo* v. *Domenech, Treas.*, 50 *D.P.R.* 972 (*per curiam* decision), thus:

"On reading appellee's motion to dismiss the appeal on the ground that the same is frivolous:

"WHEREAS, the essential question involved in this case is whether Joint Resolution No. 4, passed by the Legislature on July 16, 1932, levying a tax of 2 per cent on the assessed valuation of each *cuerda* of coffee in Puerto Rico, or hereafter planted to coffee in Puerto Rico, violates the provisions of Section 34 of the Organic Act of Puerto Rico, inasmuch as it imposes a tax by joint resolution and not by an act, as required by the cited section of the Organic Act; and

"WHEREAS, that same question was considered and decided by this court on August 1, 1936, in the case of *Valiente & Co.* v. *Treasurer* (*ante*, p. 563), in the sense that the Legislature of Puerto Rico has no power to pass a law except by a bill;

"Now THEREFORE, the appeal is dismissed, as it presents a question which has already been decided by this court.''

This would dispose of the case adversely to the Treasurer, were it not for the fact that he maintains that the joint resolution was revived on being validated by the Congress

by means of an act approved on June 16, 1938 (52 Stat., c. 460, p. 708), which reads as follows:

"(Public, No. 641—75th Cong.)

"(Chapter 460—3d Sess.)

"(H. R. 10652)

"An Act to provide for the ratification of all joint resolutions of the Legislature of Puerto Rico and of the former legislative assembly.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that all and each and every of the joint resolutions passed at any time by the Legislature of Puerto Rico or by the former legislative assembly, and approved by the Governor, be, and the same are hereby, in all things ratified, approved, and confirmed; and all acts done, contracts and conveyances made or entered into or issued or delivered or accepted or received, including bonds, deeds, and transfers of real or personal property or easements or intangible or inchoate rights, and documents and papers of every character made, taxes, collected and the collection thereof, disbursements of moneys made and warrants therefor, and all other steps, acts, judgments, decrees, and proceedings of any and every kind or nature entered into, made, done, taken, had, executed, issued, delivered, or received or accepted under or by virtue of any such joint resolution, either of the Legislature of Puerto Rico or of the former legislative assembly, be, and the same are hereby, in all things legalized, ratified, and confirmed and validated as fully to all intents and purposes, and to have the same effect, validity, operation, and effectiveness as though all and each and every of such joint resolutions had originally been enacted, validly, and approved by the Governor, in the form of 'Acts' of the legislature and of the legislative assembly, respectively, instead of in the form of 'joint resolution.' Approved, June 16, 1938."

Assuming the validity of that act, there is no doubt that the joint resolution became effective and the tax thus levied could be collected.

 The question to be determined, however, is rendered more complex by the fact that the Insular Legislature itself passed, in 1938, Act No. 260 which was approved on May 15, 1938 (Session Laws, p. 488), repealing the joint resolution, thus:

"Section 1.—Joint Resolution No. 4, entitled 'Joint Resolution to levy a special tax of two per cent on the assessed valuation of every *cuerda* of coffee; to create a "Coffee Insurance and Rehabilitation Fund"; to direct transfers from any surplus in the Treasury and to empower the Treasurer of Puerto Rico to contract a loan for said purpose; to authorize the administration of said fund, and for other purposes,' approved July 16, 1932, is hereby repealed.

"Section 2.—The Treasurer of Puerto Rico shall cancel all such receipts for the tax created by the said Joint Resolution No. 4 as may be pending collection on the date of the approval of this Act; and he shall remit the indebtedness of every taxpayer for taxes, even in those cases where the property has been adjudicated to The People of Puerto Rico.

"Section 3.—All laws or parts of laws in conflict herewith are hereby repealed.

"Section 4.—An emergency is declared to exist requiring that this Act take effect July 1, 1938, and it shall, therefore, take effect July 1, 1938."

Said act was approved prior to the enactment of the law passed by Congress, but the defendant insists that the act went into effect subsequent to such enactment.

That contention is technically very strong and might serve as the basis for a reversal if the intent of the Legislature which levied the tax had not been so clear. It was its manifest intention to go as far as possible in the matter of restitution. This is why the Treasurer of Puerto Rico was directed to cancel all receipts pending collection, and to remit any indebtedness of any taxpayer for taxes, even where the property had already been awarded to the People of Puerto Rico.

Only those who paid voluntarily were denied the right to a refund, and the plaintiff institution herein can not be held as included among them, since it paid under protest in order to avoid the attachment and sale at public auction of its property for the collection of the tax.

If that had happened and its property had been awarded to The People, its right to a refund would be manifest. Why should it not be so if, instead of its property, The People

holds its money, which it delivered in order to be able to resort to the courts for the enforcement of a right vested in it at the time suit was brought—March 23, 1938?

Therefore, in accordance with the provisions of the repealing act, the refund claimed should be allowed and, consequently, the appeal must be denied and the judgment appealed from affirmed.

Mr. Justice Snyder took no part in the decision of this case.